UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

JOHN DAVID HAMRAC                                                            PLAINTIFF

   v.                             CASE NO.4:21-CV-00292-JM

DR. CRAIG B. MIZES;
ST. MARY'S PHYSICIANS SERVICES, LLC                   DEFENDANTS

ORDER

    Plaintiff brought this negligence action against the doctor who performed his appendectomy and the hospital that employed the doctor. Pending are Defendants' joint motion for partial summary judgment and a separate motion for summary judgment filed by St. Mary's Physician Services, LLC ("St.Mary's"). (Doc. Nos. 40 and 37). Also pending is Dr. Mizes's motion in limine. (Doc. 43). Plaintiff has responded to all three, and Defendants have replied. For the reasons stated below, all three motions are granted.

Background[1]

    On August 7, 2019, Defendant Dr. Craig Mizes performed a laparoscopic appendectomy on Plaintiff John David Hamrac who was on vacation in Arkansas. Plaintiff experienced some internal bleeding after the surgery, and Dr. Mizes ordered two blood transfusions on August 9, 2019. While Plaintiff's hemoglobin and hematocrit levels remained below normal, Dr. Mizes determined that Plaintiff's levels were stable and had increased sufficiently for him to be discharged on August 10, 2019. Plaintiff's discharge instructions were to participate in only light activity and to follow up at the clinic within two or three days to recheck his blood count. Plaintiff returned to his home in Florida the day following his discharge and returned to work the

---

[1] Taken primarily from Defendants' Statement of Undisputed Facts (Doc. No. 42) and Plaintiff's responses (Doc. No. 53).

next day, driving materials to two roofing jobsites.

On August 12, 2019, Plaintiff went to West Florida Hospital ("WFH") experiencing severe abdominal pain. Plaintiff underwent a diagnostic laparoscopy at which time old blood from the internal bleed that had occurred following the appendectomy was evacuated. On August 15, 2019, a CT scan revealed a small laceration to Plaintiff's liver. Plaintiff developed an infection and was given antibiotics. He was discharged from WFH on August 21, 2019, but readmitted on August 30, 2019 with abdominal pain, fever, and vomiting from his continuing infection. On August 31, 2019, Plaintiff underwent a CT-guided drainage of his abdominal abscess and had a drain placed to collect fluid. On September 3, 2019, he began receiving IV antibiotics through a PICC line. He was discharged from WFH on September 13, 2019 with both the PICC line and the abdominal drain remaining in place.

Plaintiff filed a complaint alleging medical negligence and gross negligence against Dr. Mizes and negligent retention and negligent supervision by St. Mary's. Plaintiff initially alleged that medical negligence occurred both during the surgery—alleging Dr. Mizes had lacerated his liver—and during his post-operative care. As to gross negligence, Plaintiff alleged that Dr. Mizes, whose medical license had been suspended in 2014 for use of opioids, was under the influence of a controlled substance during his care of Plaintiff, and that Dr. Mizes denied him proper medical care after finding out that Plaintiff's only insurance was Medicaid. After Defendants filed the pending motions for summary judgment, Plaintiff filed an amended complaint removing the claim of medical negligence related to the surgery and dropped his claim for punitive damages. Defendants' motion for summary judgment on these two claims is granted.

<u>Summary Judgment Standard</u>

Summary judgment is appropriate only when the evidence, when viewed in the light most favorable to the nonmoving party, shows that there is no genuine issue of material fact and that the

2

defendant is entitled to entry of judgment as a matter of law. Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The initial burden is on the moving party to demonstrate the absence of a genuine issue of material fact. *Celotex Corp.*, at 323. The burden then shifts to the nonmoving party to establish that there is a genuine issue to be determined at trial. *Prudential Ins. Co. v. Hinkel*, 121 F.3d 364, 366 (8th Cir. 1997). "Rule 56 must be construed with due regard not only for the rights of persons asserting claims and defenses that are adequately based in fact to have those claims and defenses tried to a jury, but also for the rights of persons opposing such claims and defenses to demonstrate in the manner provided by the Rule, prior to trial, that the claims and defenses have no factual basis." *Celotex Corp.,* at 327.

Defendants' Joint Motion for Partial Summary Judgment

The only issue left for the Court to address from Defendants' joint motion for partial summary judgment is Plaintiff's claim for gross negligence.[2] Under Arkansas law, gross negligence is "[t]he intentional failure to perform a manifest duty in reckless disregard of the consequences as affecting the life or property of another." *Doe v. Baum*, 72 S.W.3d 476, 487 (2002). It has also been defined as "the failure to use even slight care." *Spence v. Vaught*, 367 S.W.2d 238, 240 (1963).

In support of his gross negligence claim, Plaintiff relies on two arguments. One, Plaintiff argues that he was discharged prematurely because Medicaid was his only insurance. He testified that when he told Dr. Mizes after the surgery that only Medicaid insurance was available, "he looked at me with a puzzled look and said, you don't have insurance, and he got up and walked off." (Doc. 40-3, p. 14). His wife testified that after her husband told Dr. Mizes that he had Medicaid, "[Dr. Mizes] had this look on his face, and then he just walked out, and that was pretty much it of that visit." (Doc. No. 40-4). Plaintiff also put forth the testimony of his

---

[2] Defendants are not seeking summary judgment on the claim for medical negligence arising out of Dr. Mizes's post-operative care of Plaintiff.

expert, Dr. Awad, that Plaintiff's low hemoglobin and hematocrit levels after he had the two blood transfusions on August 9, 2019 indicated an ongoing abdominal bleed that required treatment before he was discharged.

From this evidence, Plaintiff argues that when Dr. Mizes discharged him three days after his surgery, it was "presumably because of his insurance status." (Doc. No. 52, p. 2). The evidence Plaintiff relies on to support his claim for gross negligence is legally insufficient to establish a material fact that Dr. Mizes intentionally failed to perform a manifest duty in reckless disregard of the consequences to Plaintiff's life, failing to use even slight care. Plaintiff was treated for three days following the insurance discussion and discharged with instructions to follow up in two or three days to check his blood count. Plaintiff's interpretation of Dr. Mizes's demeanor upon learning that Plaintiff was covered by Medicaid in no way supports a claim of gross negligence.

Plaintiff's second argument in support of his claim for gross negligence is that Dr. Mizes was under the influence of a controlled substance at the time he was treating Plaintiff. Defendants offer the following undisputed evidence to defeat this claim: after having his medical license suspended in 2014 for use of opioids, Dr. Mizes agreed to a five-year monitoring contract which required that he be subjected to randomized drug testing two to five times a month; Dr. Mizes never failed any of his randomized drug tests; Plaintiff's expert agrees that there is no medical evidence indicating that Mizes was intoxicated during Plaintiff's procedure; and there is no evidence that Dr. Mizes failed to follow the appropriate standard of care in performing the surgery.

To rebut this evidence, Plaintiff relies on evidence from Defendants' toxicology expert that some drug screens would not trigger a positive result for Vicodin, the drug Dr. Mizes abused

in the past. Plaintiff also offers the testimony from himself, his wife, and their friend who was with them in the hospital that Dr. Mizes looked to them like he was on some kind of drug. Specifically, Plaintiff testified as follows: "He just real fidgety, bouncing everywhere, couldn't sit still. I mean I'm around -- I've been around people on a lot of different drugs and he kind of looked like he was on something." (Doc. 40-3, p. 29).

Plaintiff's wife, Gail Hamrac, testified that on the day of the surgery Dr. Mizes seemed "off," meaning she "thought he was on drugs" because:

> [H]e was kind of slurring his words. He was kind of moving fast, but some of the stuff he was saying to me, I just—it didn't make sense . . . But I'm no doctor, but I was like, okay, so maybe it does all make sense. . . . I guess he kind of explained the surgery like or whatever. It was just like, I don't know what he's talking about. Because he was foaming out of the mouth. I mean it was just weird. . . . I've been around people that have done drugs, and it just seemed like he was not there. Like to me, it was more of like Xanax or something."

(Doc. No. 40-4, p. 12). She further explained: Well, [he wasn't moving] like fast, fast. He was just like he didn't know where to go, like fidgety, I guess you could put it." *Id.* Ultimately, she clarified that she didn't ask to speak to anybody after he left the room and when asked if she was concerned, she responded "[n]o, I mean I wasn't sure if he was or not. Some people are weird. People act weird you know." She also testified that he seemed normal the other days, that "it was just that one day, but I didn't know him, you know, like I said, so." *Id.* at 18.

Finally, Plaintiff submits the testimony of Caroline Vargas who stated that she felt "like [Dr. Mizes] may have been under the influence of something . . . [j]ust the way he was throwing himself around the room" and "kind of slurring" and looked "messed up" the day of the surgery. Unlike the Hamracs, who said he seemed to be moving fast and fidgeting, Ms. Vargas testified that "he sat there, nonchalantly," and she described him as casual and unprofessional.

The testimony of Plaintiff, his wife, and Ms. Vargas, in context, fails to establish any reliable evidence from which a jury could find that Dr. Mizes was impaired at any time during his treatment of Plaintiff, or even that the three witnesses actually thought he was. In fact, Gail Mizes admitted that she was not concerned that he was impaired, so she did not ask to talk to someone before he operated on her husband. The Court would not submit this claim to the jury on the evidence presented. Defendants are entitled to summary judgment on Plaintiff's claim of gross negligence.

<u>St. Mary's Motion for Summary Judgment</u>

Plaintiff claims that St. Mary's is vicariously liable to him for Dr. Mizes's alleged medical negligence under the theory of respondeat superior. In addition, Plaintiff asserts claims against St. Mary's for negligent retention and negligent supervision. St. Mary's has admitted that if Dr. Mizes is found to be negligent in his treatment of Plaintiff, his negligence would be imputed to St. Mary's. Plaintiff has withdrawn his claim for punitive damages. Under these facts, the Court finds that Plaintiff's claims for negligent retention and negligent supervision are barred under Arkansas law by *Elrod v. G&R Construction Company*, 628 S.W.2d 17 (Ark. 1982).

> When a defendant denies liability, no problem is encountered by allowing a plaintiff to proceed under two consistent theories of recovery such as respondeat superior and negligent entrustment. However, when defendant admits liability under one of plaintiff's theories of recovery such as respondeat superior, difficulties do arise and the authorities are divided on the issue whether plaintiff should be allowed to proceed on one or both theories. . . . [W]e are inclined to follow the majority view which allows plaintiff to proceed on only one theory of recovery in cases where liability has been admitted as to one theory of recovery.

*Id.* at 18–19. *See also In re Vhso FTCA Litig.*, No. 5:21-CV-5091, 2022 WL 1750628, at *4 (W.D. Ark. May 31, 2022) (finding "b]ecause negligent entrustment, hiring, supervision, and retention claims are simply a means of imputing liability, like respondeat superior, pursuing one

claim after the other has been admitted is redundant.). The Court is not persuaded by Plaintiff's argument that the rule in *Elrod* is limited to actions involving motor vehicle negligence. The rational for only allowing one theory of recovery when vicarious liability has been admitted also applies in the present case. *See In re Vhso* and *Gardner v. Cont'l Cas. Co.*, No. 4:13CV00552 JLH, 2015 WL 11216699 (E.D. Ark. Mar. 18, 2015) (both medical negligence cases).[3]

Plaintiff also argues that a reasonable jury could conclude that Dr. Mizes was "unfit or unsuitable" based solely on the fact of his 2014 illegal drug use and license suspension and could further conclude that "the continued employment of an admitted drug user and liar would subject patients to harm in the course of their care." (Doc. No. 48, p. 4). The Court disagrees. Even if Plaintiff's claims of negligent retention and negligent supervision were not barred by *Elrod*, Plaintiff has failed to come forward with proof that would survive a directed verdict on his claims against St. Mary's for negligent retention and negligent supervision. For all these reasons, St. Mary's motion for summary judgment is granted on the claims of negligent retention and supervision is granted.

## Motion in Limine

Dr. Mizes moves in limine to exclude reference to four categories of evidence: (1) his alleged negligent performance of the appendectomy; (2) his history of opioid use and speculation that he was using narcotics while he was treating Plaintiff; (3) his alleged inquiry into Plaintiff's medical insurance; and (4) his alleged history of committing malpractice. Plaintiff has agreed as to the alleged negligent performance of the surgery, and that motion is granted. As the Court is granting St. Mary's motion for summary judgment on the negligent supervision and negligent

---

[3] Plaintiff has not alleged a direct negligence claim against St. Mary's involving its policies and procedures, which would not be barred by *Elrod*. See *Crouch v. Master Woodcraft Cabinetry, LLC*, No. 2:20-CV-00078 KGB, 2021 WL 4155583 (E.D. Ark. Sept. 13, 2021) (citing *Regions Bank v. White*, Case No. 4:06-cv-01475 JLH, 2009 WL 3148732 (E.D. Ark. 2009).

retention claims against it, evidence of Dr. Mizes's history of opioid use and the prior malpractice claim are irrelevant, and the motion in limine is granted as to that evidence. Finally, for the reasons stated above in discussing Plaintiff's gross negligence claims, Dr. Mizes's motion in limine to exclude speculation that he was under the influence of narcotics at the time he was treating Plaintiff and that the nature of Plaintiff's medical insurance played a role in his medical treatment is granted.

<u>Conclusion</u>

For the reasons stated above,

1. Defendants' motion for partial summary judgment (Doc. No. 40) is GRANTED;

2. St. Mary's motion for summary judgment (Doc. No. 37) is GRANTED; and

3. Dr. Mizes's first motion in limine (Doc. No. 43) is GRANTED.

IT IS SO ORDERED, this 17th day of November, 2022.

                                    _____
                                    **UNITED STATES DISTRICT JUDGE**